FILED
2008 Jun-24 PM 03:45
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

JESSICA CONTRAIR KENNAMER,

PLAINTIFF,

v. CASE NO.: CV-07-J-1737-S

CRACKER BARREL OLD COUNTRY STORE, INC.,

DEFENDANT.

**MEMORANDUM OPINION**

Pending before the court is the defendant's motion for summary judgment and evidence (docs. 16 and 17) and memorandum in support of said motion (doc. 18), to which the plaintiff filed a memorandum in opposition (doc. 23) and exhibits in support of her opposition (doc. 24), and the defendant thereafter filed a reply (doc. 27). Having considered the pleadings, evidence and memoranda of the parties, the court finds as follows:

## I. Factual Background

Plaintiff sues her past employer for sexual harassment, in violation of Title VII, 42 U.S.C. §§ 2000e *et seq*., and for negligent supervision under state law.[1] Plaintiff

[1]Upon motion of the plaintiff, the other counts of the complaint were dismissed. *See* docs. 11 and 12.

worked for defendant as a server. She was hired in January 2006. Plaintiff depo. at 35. The plaintiff was provided a handbook, which included information on who to contact if she had any issue with harassment and/or discrimination. *Id*. at 55-58; exhibits 4 and 7 to plaintiff depo. The handbook also included the defendant's harassment and discrimination policy.[2] Plaintiff depo. at 60; exhibits 3 and 6 to plaintiff depo. The plaintiff knew the district manager on sight ("[b]ald head, skinny guy, glasses") because she had waited on him several times. Plaintiff depo. at 63-64. The plaintiff also knew and felt comfortable talking to and joking with the store managers. *Id*. at 66-67. The plaintiff worked for defendant until February or March 2007 when she left for an assistant manager job at another restaurant. *Id*. at 70, 73.

The plaintiff explained that she is a very friendly, flirtatious person, but while working at Cracker Barrel, there was an incident that went "too far." Plaintiff depo. at 115-116. She asserts that she was "sexually harassed by Hermilo," a prep cook. *Id*. at 118. On the first occasion, Hermilo "grabbed" her "butt." *Id*. at 120. She told him to get his hands off her, he mumbled something in Spanish, and she walked away. *Id*. at 121-122. After that incident, Hermilo, "you know, would flirt with me, but that – that was obvious. Everybody flirted. You know, everybody flirts." *Id*. at

[2]The handbook is also available in Spanish. Cindy Shields depo. at 18, 60. Shields is the manager of labor relations for Cracker Barrel. Shields depo. at 5.

124. The plaintiff "wouldn't say I flirted back, but I maybe would bat my eyes, you know, kiddingly." *Id*. The plaintiff then stated she only gave him the "evil eye" after the first incident. *Id*. at 125.

Approximately one month later, the plaintiff was "walking to go to the bathroom ... when he grabbed the door and held the door open and was sexually harassing me." Plaintiff depo. at 126-127. According to the plaintiff, Hermilo grabbed her butt, then stated something along the lines of "sexo en el bano" which she believed meant "sex in the bathroom" in Spanish. *Id*. at 133. The plaintiff told him no, but he put his hands all over her and she screamed "get your hands off me." *Id*. She knocked his hands off her and he grabbed at her wrists and tried to pin her against the wall. *Id*. at 136. At that point, the plaintiff hit him, left the bathroom, and walked into the breakroom. *Id*. at 137-138. The plaintiff then stated that actually, after she told him she did not want to have sex in the bathroom, she turned and went into the breakroom, and that was where he pinned her in a corner. *Id*. at 139-140. Then she hit him in the throat. *Id*. at 141. Hermilo ran away and went into the cooler. *Id*. at 142. The plaintiff chased him and looked for a manager. *Id*. at 143. She opened the cooler door, yelled "don't ever touch me again," closed the cooler door, and went back to waiting on her tables. *Id*. at 144-145.

The plaintiff saw Hermilo in the prep area laughing, at which point she went after him yelling, "you wetback spic mother-fucker, don't ever touch me again." Plaintiff depo. at 146. The employee training coordinator[3] heard the plaintiff's epithets and took the plaintiff into the office. *Id*.; declaration of Sherry Howard, submitted as defendant exhibit D, ¶ 8. The plaintiff told her and the manager[4] what happened.[5] Plaintiff depo. at 147-148. The manager then went to talk to Hermilo. *Id*. at 148. He also told the plaintiff that if she was uncomfortable she could leave. *Id*. at 148-149. After being taken into the office, Hermilo returned to the prep area. *Id*. at 150. The plaintiff tried to continue waiting tables but felt frustrated and emotional and told the manager she needed to leave. *Id*. at 150-151. She left, but on the advice of her boyfriend, called the police and returned to Cracker Barrel to meet them. *Id*. at 152-153. The plaintiff opted not to press charges because she would

[3]The employee training coordinator (ETC) was Sherry Howard. Gogan depo. at 21-22, 72.

[4]John Paul Gogan was the general manager. Greg Meares was an associate manager who was actually on duty at the time of the second incident. Gogan depo. at 17, 21.

[5]By declaration, Sherry Howard stated that the plaintiff complained Hermilo "had been bothering her that day by touching her butt and putting paper on it." Howard declaration, ¶ 8. The plaintiff also told Howard that she had spoken to Gogan about Arturo Lopez before, but he had done nothing. *Id*. Howard further relates that after plaintiff left that evening, she came back and handed Howard a statement that included two other employees and Hermilo cornering her and trying to touch her. *Id.*

According to Meares, the plaintiff told him that Hermilo had been touching her, tried to follow her into the restroom, and had put some paper on her "back/butt" and then she went after him. Exhibit 5 to Gogan depo. He asked her if she wanted to give a statement so he could start an investigation and she told him yes because it had happened before. *Id.*

have to "wait a little while.... [s]o by the time it would have been able for me to press charges, I was suspended from work, I was – you know, and when I went back to work after the investigation, Hermilo was nowhere to be found." *Id*. at 156. The investigation failed to substantiate plaintiff's allegations, but did confirm that the plaintiff made inappropriate comments and that there was horseplay among the employees. Declaration of Barnes, ¶ 15.

After meeting with the police and leaving again, the plaintiff got a call informing her that she could not return to work until an investigation was performed, and that she was suspended for using a racial slur.[6] Plaintiff depo. at 165-166; Gogan depo. at 30, 38. The plaintiff told her side of the story and provided defendant with a written statement.[7] Plaintiff depo. at 167-168; exhibit 11 to plaintiff depo. A week

[6]The sole evidence the plaintiff was suspended for using a racial slur is her own statement. The defendant's policy is to suspend employees while allegations are investigated and, upon completion of the investigation, determine whether to pay the employee for the time suspended. Declaration of Kelly Barnes, Senior Employee Relations Specialist for defendant, at 7, submitted as defendant exhibit H.

[7]This written statement differs vastly from the plaintiff's deposition testimony. Exhibit 11 to plaintiff depo. In her unsworn statement, dated September 24, 2006, the plaintiff states as follows:

In July, 2006, Hermilo followed her into the bathroom, started to grab her left breast and tried to put his hand down her pants, upon which she kicked him in the genital area. Immediately thereafter, she informed John Paul Gogan, the General Manager what had happened and he said he would take care of it. Sometime later, while waiting on Gogan, he inquired about Arturo harassing her, and she stated that they were friends and there was no issue there. He then asked her about the "prep cook" and she said she had no further problems with him. Then, on September 15, 2006, the plaintiff went by the breakroom, felt Hermilo pat her and realized he had taped a plain white piece of paper to her back. Later, on her way to the restroom, Hermilo

and a half later, the plaintiff returned to work. Plaintiff depo. at 169, 179. She was paid for the time she was suspended. *Id*. at 169. Hermilo was never seen again. *Id*. at 180, 190.

The plaintiff testified that Hermilo had touched other girls and "we had all said something to the manager about it and nothing was done." Plaintiff depo. at 160. The "other girls" were Stephanie Fehn, a co-employee, but the plaintiff was not sure she had actually said anything. *Id*. at 162-163. By declaration, Stephanie Fehn states that plaintiff never told her about any problem she had with Jimenez Hermilo[8] or any other employee prior to September 15, 2006. Fehn declaration, submitted as

---

"growled sexually" at her, grabbed her butt and tried to put his hands on her breasts. She pushed him away, slammed the door and locked it. Hermilo pounded on the door and growled, but went away after about ten seconds. As she was leaving, Hermilo again grabbed her butt, and she continued waiting on her tables. Upon her return to the kitchen, she found that she had a long white piece of paper taped to her butt like a tail, which she assumed was placed there again by Hermilo. She confronted Hermilo, who was hiding in the breakroom, and threw the paper at him, upon which he grabbed her shoulder, pushed her into a corner, tried to kiss her and slapped her butt. She alleged that "Hermilo proceeded to attempt to rape me and assault me by pushing me around when I tried to leave and I became very upset." She started to kick and slap Hermilo, but realized he was stronger than her. She got in one good punch to his neck. She states that she was screaming this entire time. After she punched him, Hermilo ran away to the cooler. She followed him, assumed he had gone into the freezer, opened the freezer door and told him never to put his hands on her again, and then went to check on the one table she had.

At this point the plaintiff returned to the kitchen looking for the manager, but found Hermilo laughing so she charged him screaming, "You wetback spic mother fucker I will kick your ass if you try to touch me again." The employee training coordinator heard her, so she went into the office and explained what happened. The manager offered to send Hermilo home, but the plaintiff replied that she was too upset to keep working and needed to leave. When she got home, her boyfriend told her to go back to work and call the police. She did, and when the police arrived she filed a report.

[8]He is also referred to as Hermilo Jimenez. Gogan depo. at 22.

defendant exhibit B, ¶ 5. She further stated that she was never harassed by Hermilo. Fehn declaration, ¶ 15. Fehn stated that Greg Meares[9] sent home "that prep guy" plaintiff had cussed that same day. Fehn declaration, ¶¶ 9-10.

The plaintiff testified that, at some point while waiting on John Paul Gogan's table, she told him about the first incident. Plaintiff depo. at 161-162, 183-185. According to Gogan, the plaintiff never reported anything to him about Hermilo harassing her. Gogan depo. at 56. The plaintiff did tell him about a problem she had with an employee named "Arturo" during the summer of 2006. Gogan depo. at 26; exhibit 5 to Gogan depo. He told her he would speak to Arturo, and did. Gogan depo. at 26-27, 68-70. No other female employee made any complaint of sexual harassment while he worked at this store. *Id*. at 33, 51. Cindy Shields, manager of labor relations for defendant, testified that plaintiff did not complain about the July incident with Hermilo until after the September incident was reported. Shields depo. at 32.

Pursuant to defendant's sexual harassment policy, an employee could make a complaint to the store manager, the district manager, or call the hotline number. Gogan depo. at 64-65.

---

[9]Greg Meares was an associate manager at the time in question. Gogan depo. at 17. Gogan was not in the store. Gogan depo. at 27. He learned of the incident by a phone call from Meares. Grogan depo. at 28. He told Meares to let plaintiff go home and to send Hermilo home too. Grogan depo. at 29-30.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp.,* 477 U.S. at 322-23. The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed. R. Civ. Pro 56(e).

In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita*, 475 U.S. at 587, *see also Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991). Summary judgment should be granted only when the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Springer v. Convergys Customer Management Group, Inc.*, 509 F.3d 1344, 1347 (11th Cir.2007).

## III. LEGAL ANALYSIS

The court must consider the evidence in the light most favorable to the plaintiff and may not make credibility determinations nor weigh the parties' evidence. *Frederick v. Sprint/United Management Co.* 246 F.3d 1305, 1311 (11th Cir.2001); *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir.2000). With these standards in mind, the court considers the plaintiff's claims.

*A. Sexual Harassment*

The Eleventh Circuit Court of Appeals has stated:

> Title VII prohibits sex-based discrimination that alters the terms and conditions of employment. 42 U.S.C. § 2000e-2(a)(1). The forbidden alteration can be brought about in either of two ways. *Hulsey v. Pride Rests., LLC,* 367 F.3d 1238, 1245 (11th Cir.2004). One is through a tangible employment action, such as a pay decrease, demotion or termination. *Id.* The other way is through creation of a hostile work environment caused by sexual harassment that is sufficiently severe or pervasive to alter the terms and conditions of work. *Id.*

*Baldwin v. Blue Cross/Blue Shield of Alabama,* 480 F.3d 1287, 1300 (11th Cir.2007). Because the plaintiff does not complain of any tangible employment action, the court considers only whether the alleged actions created an environment "that is sufficiently severe or pervasive to alter the terms and conditions of work." *Id.*

To demonstrate sexual harassment, a plaintiff must show: "(1) that she belongs to a protected group; (2) that she has been subject to unwelcome sexual harassment; (3) that the harassment was based on her sex; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment; and (5) that there is a basis for holding the employer liable." *Pipkins v. City of Temple Terrace, Florida,* 267 F.3d 1197, 1199 (11th Cir.2001). In order to establish a basis for holding the defendant liable for a hostile work environment, the plaintiff must show that the defendant had notice of the alleged harassment and failed to take immediate and appropriate corrective action. *Watson v. Blue Circle, Inc.*, 324 F.3d 1252, 1257 (11th Cir.2003), citing *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1278-80 (11th Cir.2002).

The parties do not dispute that the plaintiff belongs to a protected group. While the defendant disputes that the harassment was unwelcome, the court must view the evidence in the light most favorable to the plaintiff.[10]  In that context, the court accepts the plaintiff's assertion that Hermilo's actions were unwelcome.[11]  Similarly, the court finds the actions were based on the plaintiff's sex.  The defendant disputes that the harassment was severe or pervasive enough to alter the terms and conditions of employment.

In the light most favorable to the plaintiff, the court finds that the plaintiff complains of two separate instances of harassment which occurred two months apart. The first instance, in July 2006, involved Hermilo either following her into the bathroom, "start[ing] to grab her left breast" and "tr[ying] to put his hand down her

---

[10]In essence, the defendant argues that the plaintiff welcomed the conduct by her openly flirtatious manner.  Although this court has opted not to detail the examples of the plaintiff's behavior, other courts have held public sexual behavior the plaintiff engaged in while at work is relevant to a sexual harassment claim. *See Beard v. Flying J, Inc.*, 266 F.3d 792, 801 (8th Cir.2001) (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 69, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), for the proposition evidence of workplace behavior is highly relevant to the question of whether the alleged harassment was welcome); *Myer-Dupuis v. Thomson Newspapers, Inc.*, 134 F.3d 371, 1997 WL 809955 (6th Cir. Dec.19, 1997) (unpublished) (affirming district court that admitted public actions of the plaintiff at work, but excluded other evidence about the plaintiff's private sexual acts).  For purposes of this opinion, the court has accepted the plaintiff's assertion that the conduct was unwelcome.

[11]The plaintiff asserts that "Cracker Barrel has failed to establish that Jiminez's attention was unwelcome as a matter of law."  Plaintiff's memorandum at 10.  The court notes that defendant in fact argues that the attention was not unwelcome at all, but invited by the plaintiff. Defendant points out that "[w]hatever Mr. Jimenez allegedly did to the plaintiff the first time, she continued to bat her eyes at him which could not have made clear to him that she felt harassed." Defendant's reply, at 6.

pants, upon which she kicked him in the genital area," plaintiff's statement of September 24, 2008, or grabbing her buttocks and her stating he should keep his hands off of her.[12] Plaintiff depo. at 121-123. In the light most favorable to the plaintiff, the court assumes that the plaintiff did report it to Gogan at some point.[13] She stated in her deposition that while she waited on him one day, Gogan asked her how every thing was going, and she told him about the first incident, to which he responded he would take care of it. Plaintiff depo. at 161-162.

The plaintiff had no further problem with Hermilo until September 16, 2008, when Hermilo "growled sexually" at her, grabbed her butt, tried to put his hands on her breasts, then later grabbed her butt, after which the plaintiff continued waiting tables. Upon finding a long white piece of paper taped to her butt like a tail, she confronted Hermilo, who was hiding in the breakroom. Hermilo grabbed her shoulder, tried to kiss her, and slapped her butt. The plaintiff punched him in the neck. She again hunted him down, this time in the freezer, and told him never to put

[12]The plaintiff's unsworn statement from September 2006 varies greatly from her deposition testimony. The plaintiff blames defense counsel for this, because defense counsel did not let the plaintiff review her prior statement during her deposition while testifying about the basis for this lawsuit. The defendant asserts that "[i]t defies logic that any woman would not remember these events without reference to a script." Defendant's reply, at 4. According to plaintiff's deposition testimony, this first incident consisted solely of Hermilo grabbing the plaintiff's buttocks, upon which she told him "don't touch me," and returned to work. Plaintiff depo. at 121-123.

[13] Each version of the facts before the court was produced by the plaintiff. The court has no evidence before it as to what occurred between the plaintiff and Hermilo other than the plaintiff's own conflicting statements.

his hands on her again, before returning to check on the one table she had.[14]  At this point the plaintiff returned to the kitchen looking for the manager, but found Hermilo laughing so she charged him screaming, "You wetback spic mother fucker I will kick your ass if you try to touch me again."  At that point the employee training coordinator heard her, so she went into the office and explained what happened.

Missing from any of the plaintiff's renditions of the events in question is an allegation that the events in question altered the terms and conditions of her employment.  Not until she was pulled into the office for screaming profanities in the restaurant did the plaintiff complain about Hermilo to any manager.  Additionally, the evidence establishes that the plaintiff screamed the colorful language because she thought Hermilo was laughing at her, not because he groped her.

To prevail on a Title VII sexual harassment claim, the plaintiff must show that the conduct in question created a "hostile work environment caused by sexual harassment that is sufficiently severe or pervasive to alter the terms and conditions

---

[14]According to the plaintiff, Hermilo went "into the cooler running from me because I'm – apparently I'm angry ....  I chase after him, yes."  The testimony continued:
    Q.  So you whack him in the throat, he runs off and you chase after him?
    A.  Yeah.  I'm mad.  I'm ready to beat him up.
    Q.  Kill him?
    A.  Yeah.
    Q.  I understand.
    A.  Well, not kill him, beat him up.

Plaintiff depo. at 142-143.

of work." *Reeves v. C.H. Robinson Worldwide, Inc.*, 525 F.3d 1139, 1143 (11th Cir.2008) (*quoting Baldwin v. Blue Cross/Blue Shield of Ala.*, 480 F.3d 1287, 1300 (11th Cir.2007), cert. denied, --- U.S. ----, 128 S.Ct. 499, 169 L.Ed.2d 341 (2007)); *Hulsey v. Pride Rests., LLC*, 367 F.3d 1238, 1244 (11th Cir.2004). Here, the plaintiff does not allege that the harassment altered the terms and conditions of her work.

The standard set forth by which district courts are to measure the severity or pervasiveness of harassment includes both a subjective and an objective component. The court assumes that the plaintiff subjectively perceived the harassment to be severe. Hence the court focuses on the objective component, for which the Supreme Court and the Eleventh Circuit have identified four factors that should be considered in determining whether harassment objectively altered an employee's terms or conditions of employment: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance. *Mendoza,* 195 F.3d at 1246, citing *Allen v. Tyson Foods*, 121 F.3d 642, 647 (11th Cir.1997) (citing *Harris*, 510 U.S. at 23, 114 S.Ct. 367). See also *Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75, 81, 118 S.Ct. 998, 1002-03, 140 L.Ed.2d 201 (1998) ("The prohibition of harassment on the

basis of sex forbids only behavior so objectively offensive as to alter the 'conditions' of the victim's employment").

The purpose of the "severe or pervasive element" is to "filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Reeves*, 525 F.3d at 1145 (quoting *Faragher*, 524 U.S. at 788, 118 S.Ct. at 2284 (internal quotation marks omitted). The element is only satisfied, moreover, "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult." *Reeves*, 525 F.3d at, 1145 (quoting *Harris*, 510 U.S. at 21, 114 S.Ct. at 370).

The conduct complained of happened on two occasions, two months apart. Being grabbed in a sexual manner is severe conduct. The court has a harder time finding that the plaintiff reasonably felt threatened, as the first time she kicked Hermilo in the genitalia, and the second time punched him in the neck, and told him she would "kick his ass" if he tried that again, after which the plaintiff took the rest of the evening off.

The plaintiff testified that after the first incident, she gave Hermilo the "evil eye." After the second incident, Hermilo never returned to work. Given the facts of this case, the court finds that the plaintiff failed to establish her prima facie case because she does not allege, argue, or point to any evidence that the actions of

Hermilo impacted her job performance in any way. Additionally, the defendant has established that it used reasonable care to prevent sexually harassing behavior, that the plaintiff reported she had no trouble from Hermilo after the first incident, and it could take no action after the second incident because Hermilo disappeared. In other words, there is no basis for holding the employer liable. *See Pipkins,* 267 F.3d at 1199. Additionally, once the plaintiff informed the defendant of the alleged harassment it took immediate action, as it was required to do. *Watson*, 324 F.3d at 1257.

The plaintiff does not allege that she could not perform her job due to Hermilo's actions. After the second incident, the plaintiff continued to work for defendant, at the same location, until she resigned her employment for wholly unrelated reasons. Title VII requires an employee to "make some showing in order to connect allegations of sexual harassment to a violation of Title VII." *Mendoza v. Borden, Inc*., 195 F.3d 1238, 1245-1246 (11th Cir.1999). The plaintiff has failed to present sufficient evidence to demonstrate that her working environment was hostile. *See e.g., Coker v. Ball Janitor Service, Inc*. 2000 WL 305487, 6 (10th Cir.2000).

Under the specific facts of this case, the court is of the opinion that there is no genuine issue of material fact and the defendant is entitled to judgment in its favor as a matter of law, because the plaintiff has failed to make a showing sufficient to

establish the existence of an element essential to her claim, and on which she will bear the burden of proof at trial. See *Celotex Corp.,* 477 U.S. at 322-23.

B. *Negligent Supervision*

While this court has supplemental jurisdiction over the plaintiff's state law claim pursuant to 28 U.S.C. § 1367(a), the court declines to exercise supplemental jurisdiction. *See* 28 U.S.C. § 1367(c)(3). Because resolution of the remaining count of the plaintiff's complaint depends on determinations of state law, that claim is best resolved by the Alabama courts. *See Baggett v. First National Bank of Gainesville,* 117 F.3d 1342, 1352-1353 (11th Cir.1997). The court notes that the plaintiff's state law claim will not be barred by the statutes of limitations in light of the tolling provisions of 28 U.S.C. § 1367(d).

**CONCLUSION**

Having considered the foregoing, and finding that the plaintiff has failed to establish any genuine issue of material fact sufficient to allow this case to proceed to trial on her claim pursuant to Title VII, the court **ORDERS** that the defendant's motion for summary judgment on plaintiff's claim for violation of Title VII is hereby **GRANTED**. That claim is **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** by the court that the plaintiff's state law claim is **DISMISSED WITHOUT PREJUDICE** to plaintiff's right to refile said claim in the appropriate state court forum.

Each party is to bear its own costs.

**DONE** and **ORDERED** this the 24th day of June, 2008.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE